LAWRENCE E. MUSICK *v.* STATE OF INDIANA.

[No. 975S209. Filed August 23, 1976.]

*David W. Foley, Mullin, Foley & Gilroy,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *James N. Shumacker,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant was charged in a single count indictment with first degree murder. Ind. Code § 35-13-4-1 (Burns 1975). He was tried by jury before the Honorable Andrew Jacobs, Sr., Special Judge[1], found guilty as charged, and received a sentence of life imprisonment.

---

1. The trial of this cause occurred before Judge Jacobs took office as the regular judge of the court; the Honorable Harold Kohlmeyer, Judge, appointed Judge Jacobs special judge in this cause.

Appellant was convicted of murdering his former wife Sharon Musick. Mrs. Musick was shot and killed in the parking lot of a suburban shopping center before a half dozen witnesses, at least five of whom identified appellant at trial as her assailant.

On appeal, appellant first claims that the trial court erred in admitting State's Exhibit No. 9 into evidence. This Exhibit was a 16 gauge single shot shotgun. When offered, defense counsel made the following objection:

"I object to it being introduced into evidence on the basis that there has been no link for purposes of this offense to offer that gun into evidence for establishing an element to this crime because there has never been a link shown in evidence between that gun and this Defendant and the scene of the crime."

On appeal, appellant contends that this exhibit was inadmissible because it was not shown "connected to the defendant at the alleged scene of the murder." Appellant takes the position that under this Court's ruling in *Siberry* v. *State*, (1893) 133 Ind. 677, 33 N.E. 681, an alleged murder weapon cannot be admitted into evidence until such weapon is identified by sufficient evidence. As a starting point in dealing with this issue, it cannot be doubted that a weapon with which the mortal wound was inflicted is relevant evidence in a first degree murder case in which the charge is murder by shooting. In dealing with the issue of relevance in *Pirtle* v. *State*, (1975) 263 Ind. 16, 323 N.E.2d 634, 643, we quoted authority on the subject:

"[T]he most acceptable test of relevance is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?*" McCormick, Evidence § 185 at 437. In Indiana 'evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight.' *Thomas* v. *State* (1968) 251 Ind. 76, 80, 238 N.E.2d 20, 22."

A gun, once shown to be the murder weapon, would be highly relevant to show purpose and malice, that the victim died as a result of gunshot wounds, and would, if sufficiently con-

nected to the accused, serve to identify the accused as the perpetrator of the homicide.

The record is replete with evidence tending to support the inference that the victim was shot with State's Exhibit No. 9 and that appellant had it in his possession at the scene and at the time of the shooting.

The testimony of the eyewitnesses to the shooting served to identify appellant as having shot his wife with a 16 or 12 gauge single shot shotgun, break-down type. Exhibit No. 9 is a 16 gauge gun and meets this description. The testimony of Mr. and Mrs. Frazier established that Exhibit No. 9 belonged to them and that they loaned it along with a box of shells to appellant two days before the shooting. Within an hour or so after the time of the shooting, appellant returned the exhibit to Mr. and Mrs. Frazier and on that occasion responded to an inquiry by Mr. Frazier about how the gun handled by stating that the gun kicked a little. The testimony of appellant's friend, Martha Kanouse, at whose residence he was arrested shortly after the shooting was that the gun which they had had and which had just been returned to the Fraziers had been kept in the trunk of her car. Eyewitnesses at the scene had identified this car by color, make and license number as having been driven by appellant at the time and scene of the crime. Officer Larkins testified that he found two spent shotgun shells at the scene having the same gauge as that of Exhibit No. 9. While such evidence is circumstantial, it sufficiently identifies State's Exhibit No. 9 as the murder weapon. The trial court correctly overrued appellant's objection and admitted Exhibit No. 9.

Appellant next claims that the trial court erred in not directing a verdict of acquittal at the end of the State's case upon the ground that the State failed to present evidence of premeditation. From the body of appellant's argument in the brief, we take it that appellant is arguing that the evidence of the element of premeditation was insufficient to support the jury's verdict. In addition to the evidence already

recited, that appellant borrowed a shotgun and drove to the shopping center where he intercepted his wife and shot her twice with that gun, a friend with whom the victim was living testified at trial that appellant had told the friend on August 1st, prior to the shooting on August 3rd, that his wife was "as good as dead." From this statement and the other circumstances related the jury was warranted in concluding beyond a reasonable doubt that appellant formed a design to kill his wife, deliberated on it, and then carried it out. The evidence of premeditation was sufficient.

Appellant's last claim is that the trial court overstepped the bounds of his duty as a judge in aiding the State to ask specific questions of certain witnesses and in examining certain witnesses himself. On one of the occasions complained of the court admonished the deputy prosecutor to be more specific in his questions, but did not admonish the deputy prosecutor to ask any specific question. At another point a suggestion made by the trial judge regarding the proper manner of getting evidence in was ignored by the deputy prosecutor who responded by simply letting the entire subject drop. At another point a police officer testifying on behalf of the State repeatedly answered questions about a certain occurrence by telling what was being said on that occasion. After sustaining a defense objection to such answer the court, on behalf of the prosecutor, asked the witness:

"Court:   What did he do and what did you do.
Answer:  He showed me where the gun was.
Court:   What did you do then?
Answer:  I then took possession of the gun.
Court:   O.K."

By these questions and others complained about the court demonstrated to the deputy prosecutor the proper manner of questioning and stopped the witnesses from injecting improper and possibly prejudicial matter into the trial. The court's assistance here was only technical and was within his discretion to guide the trial to preserve its fairness and integrity. *Grubbs* v. *State*, (1970) 255 Ind. 411, 265 N.E.2d

40; *Marposon* v. *State*, (1972) 259 Ind. 426, 287 N.E.2d 857; *Kennedy* v. *State*, (1972) 258 Ind. 811, 280 N.E.2d 611; *Swift* v. *State*, (1970) 255 Ind. 337, 264 N.E.2d 317.

During these episodes the trial judge maintained a dignified and tolerant attitude and did not engage in any improper undignified or idiosyncratic behavior which would have served to threaten the fairness of the proceedings. See, *Owens* v. *State*, (1971) 255 Ind. 693, 266 N.E.2d 612; *Dixon* v. *State*, (1972) 154 Ind. App. 603, 290 N.E.2d 731. Appellant also claims that the court committed error in conducting the examination of the court-appointed psychiatrists. At trial, at the commencement of the questioning of each of these witnesses, the trial court asked questions the purpose of which were to establish their expert qualifications, the type of examination made by the witness of the accused, and finally the witnesses' opinion. Each witness was then turned over to the parties for cross-examination. The judge did not conduct this examination in a partial or prejudicial manner. *Kennedy* v. *State, supra.* Ind. Code § 35-5-2-2 (Burns 1974) governing the subject provides in relevant part:

"When an insanity defense is pleaded, the court shall appoint two [2], or three [3], competent disinterested physicians to examine the defendant, and to testify at the trial. Such testimony shall follow the presentation of the evidence for the prosecution and for the defense, including testimony of medical experts employed by the state and by the defense, if any. The medical witnesses appointed by the court may be cross-examined by both the prosecution and the defense, and each side may introduce evidence in rebuttal to the testimony of such medical witnesses."

While this statute does not specifically so state, the charge and intendment of it is that the trial judge may conduct the direct examination of the court-appointed psychiatrists and the parties may cross-examine such witnesses. That is precisely the procedure followed in the trial of this case.

The conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 352 N.E.2d 717.